UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS (HOUSTON)

|  |  |  |
|---|---|---|
| IN RE: | . | Case No. 25-90305 |
|  | . | Chapter 11 |
| ALEON METALS, LLC, et al. | . |  |
|  | . | 515 Rusk Street |
| Debtors. | . | Houston, TX 77002 |
|  | . |  |
|  | . | Friday, August 22, 2025 |
| . . . . . . . . . . . . . . . . | . | 10:00 a.m. |

TRANSCRIPT OF EMERGENCY MOTION DEBTORS EMERGENCY MOTION FOR
ENTRY OF (I) AN ORDER (A) APPROVING BIDDING PROCEDURES FOR THE
SALE OF SUBSTANTIALLY ALL OF THE DEBTORS ASSETS,
(B) AUTHORIZING ENTRY INTO THE STALKING HORSE AGREEMENT,
(C) APPROVING PROCEDURES FOR THE DEBTORS ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES,
(D) SCHEDULING AN AUCTION AND SALE HEARING, (E) APPROVING THE
FORM AND MANNER OF NOTICE THEREOF, AND (F) GRANTING RELATED
RELIEF, AND (II) AN ORDER (A) APPROVING THE SALE OF THE DEBTORS
ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND
ENCUMBRANCES, (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF
EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING
RELATED RELIEF [11]
BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES CONTINUED.

Audio Operator:          Yesenia Lila, ECR

Transcription Company:   Access Transcripts, LLC
                         10110 Youngwood Lane
                         Fishers, IN 46048
                         (855) 873-2223
                         www.accesstranscripts.com

     Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

TELEPHONIC APPEARANCES (Continued):


For the Debtor:         Norton Rose Fulbright US LLP
                        By:  JASON BOLAND, ESQ.
                             JULIE HARRISON, ESQ.
                             MARIA MOKRZYCKA, ESQ.
                        1550 Lamar Street, Suite 2000
                        Houston, TX 77010
                        (713) 651-5151

                        Morrison & Foerster LLP
                        By:  JENNIFER L. MARINES, ESQ.
                             ANDREW KISSNER, ESQ.
                             JOSEPH MURPHY, ESQ.
                        250 West 55th Street
                        New York, NY 10019-9601
                        (212) 468-8000

For Mason Metals LLC:   Haynes and Boone LLP
                        By:  DAVID LAWRENCE STAAB, ESQ.
                        301 Commerce Street, Suite 2600
                        Fort Worth, TX 76102
                        (817) 347-6645

                        Haynes and Boone LLP
                        By:  KENRIC D. KATTNER, ESQ.
                        1221 McKinney Street, Suite 4000
                        Houston, TX 77010
                        (713) 547-2000

For UMB Bank, National  Arnold & Porter LLP
Association, in its     By:  MICHAEL D. MESSERSMITH, ESQ.
separate capacities as  70 West Madison Street, Suite 4200
Trustees and Agents:    Chicago, IL 60602-4231
                        (312) 583-2300

For Texas Commission    Office of the Attorney General of
on Environmental        Texas
Quality:                By:  LAYLA MILLIGAN, ESQ.
                        P.O. Box 12548
                        Austin, TX 78711
                        (512) 475-4933

3

 1     (Proceedings commence at 10:00 a.m.)

 2          THE COURT:  Okay, good morning everyone.  This is

 3  Judge Lopez.  Today is August 22nd.  I'm going to call the 10

 4  a.m. case, 25-90305, Aleon Metals, in connection with a bidding

 5  procedures motion.  There's no one in the courtroom today.

 6  We're proceeding virtually, so if parties wish to make an

 7  appearance, please hit "five star," and I will unmute your

 8  line.

 9          I'll just go in the order in which I see them.

10  Here's a 713 number.

11          MR. BOLAND:  Good morning, Judge.  Jason Boland and

12  Julie Harrison of Norton Rose Fulbright as proposed co-counsel

13  for the debtors.  We're joined this morning our co-counsel of

14  the Morrison Foerster firm, Jennifer Marines and Andrew

15  Kissner.

16          THE COURT:  Good morning.

17          It's a 312 number.

18          MR. MESSERSMITH:  Good morning, Your Honor.  Mike

19  Messersmith from Arnold & Porter on behalf of UMB Bank,

20  National Association, as indenture trustee and as DIP agent.

21          THE COURT:  Good morning.  It's a 646 number.

22          MR. KISSNER:  Good morning, Your Honor.  This is

23  Andrew Kissner or Morrison & Foerster, proposed counsel for the

24  debtors.

25          THE COURT:  Good morning.

1              And a 512 number.

2              MS. MILLIGAN:  Good morning, Your Honor.  This is

3   Layla Milligan with the Texas Attorney General's Office,

4   appearing on behalf of the Texas Commission on Environmental

5   Quality.

6              THE COURT:  Good morning.

7              And an 817 number.

8              MR. STAAB:  Good morning, Your Honor.  David Staab

9   on behalf of Mason Metals LLC.

10             THE COURT:  Good morning.

11             If anyone has wished to make an appearance, please

12  hit "five star," and I will unmute your line.

13             Okay.  Who should I turn this over to?

14             MR. BOLAND:  Mr. Kissner will be handling this

15  morning's hearing, Judge.

16             THE COURT:  All right, Mr. Kissner.  Good morning.

17             MR. KISSNER:  Good morning, Your Honor.  And again,

18  just for the record, Andrew Kissner, Morrison Foerster,

19  proposed counsel to the debtors, and I'll be handling the sole

20  remaining agenda item, which was carried over from Tuesday's

21  hearing.  And again, I'd just like to thank Your Honor, for

22  making yourself and your staff, as well, available on short

23  notice.  (Indiscernible) exigency to the case.

24             We're here on the debtors' motion for approval of

25  bid procedures and entry into a stalking horse purchase

1  agreement.  That was filed at Docket Number 11 and was

2  supported by the declarations of Roy Gallagher, which was

3  admitted at Debtors' Exhibit 1, and Richard Morgner, which was

4  admitted as Debtors' Exhibit 4.

5           A few housekeeping and administrative matters or

6  updates before we proceed.  Earlier this week, prior to the

7  first-day hearing, the debtors have received outreach from

8  Mason Metals regarding a reservation of rights that had to do

9  with the ownership of certain metals in bins on the debtor's

10 property.  As my colleague, Mr. Butterfield, explained with

11 respect to the DIP on Tuesday, we reached an agreement with

12 Mason (audio interference) --

13           THE COURT:  Mr. Kissner, you broke up.  I couldn't

14 hear the last portion of what you were saying, but I -- it

15 sounded like -- you mentioned Mr. Butterfield in connection

16 with the DIP.  That's where --

17           MR. KISSNER:  I apologize.

18           THE COURT:  No worries.

19           MR. KISSNER:  Is this better?

20           THE COURT:  Perfect.  Thank you.

21           MR. KISSNER:  Okay.  5G sometimes, you know.

22           We reached an agreement on reservation of rights

23 language that would be included in the revised form of order.

24 With respect to the TCEQ, we have been going back and forth

25 with counsel to the DIP agent and with Ms. Milligan's office

1    regarding concerns and questions that TCEQ had raised with

2    respect to the bid procedures.  And we've, I believe, just now

3    reached an agreement, I think -- they can keep me honest -- on

4    language to be included in the bid procedures order that sets

5    forth a reservation of rights in favor of TCEQ, right, that

6    nothing in the bid procedures prejudices their rights with

7    respect to an eventual sale, and that the debtors will work to

8    consult with TCEQ on certain matters that impact their

9    interests and will endeavor to provide advance copies of sale

10   order, APA, and other relevant documents to the regulator.

11            I'll pause, Ms. Milligan, in case I don't have that

12   right or you have anything that you want to add.

13            MS. MILLIGAN:  Yes, thank you.  Again, Layla

14   Milligan on behalf of the TCEQ.

15            I do just want to express my thanks to Mr. Kissner

16   and to the other parties for working with us to address some of

17   our concerns with the timing and information in the bidding

18   procedures order.  We have been exchanging emails, just

19   including up to moments ago, and we appreciate the feedback and

20   willingness to work with us.

21            But, yes, what Mr. Kisner has reported to the Court

22   is correct.  I think we're in agreement as to language that

23   provides TCEQ with information and the ability to review

24   prospective purchasers and continue those negotiations to make

25   sure that all of the environmental concerns and regulatory

7

1  concerns are addressed throughout the sales process and

2  (indiscernible) a successful purchaser, and we appreciate those

3  efforts.

4            THE COURT:  Thank you.

5            MR. KISSNER:  And I would also just say that, more

6  generally, as previewed the other day, both the debtors and the

7  DIP agent and Mr. Messersmith's clients have already been

8  working with the TCEQ to try to get them answers to the

9  questions that they have, and we have scheduled a follow-up

10  meeting with our regulator next week to talk through that in

11  further detail, so more to come, I'm sure.

12            The last piece of housekeeping, I just wanted to

13  note that we had, prior to the petition date, previewed the

14  motion and form of order with the Office to the U.S. Trustee.

15  Any comments that they had were reflected, and we did not heard

16  anything further.  As I'm speaking now, I realize that for the

17  good of the order, we should probably send a copy of the

18  revised proposed order after this hearing to Mr. Nguyen to make

19  sure he doesn't have any issues, but I wouldn't anticipate any,

20  and so with that, I think we're ready to proceed on what I

21  believe to be a substantial consensual basis on bidding

22  procedures.  So I'm happy to give a brief overview of the

23  motion, or if Your Honor prefers, I can also just, you know,

24  skip ahead to any questions or concerns that Your Honor had on

25  the motion earlier.

8

1          THE COURT:  No questions or concerns.  If you just

2  want to highlight for me, just kind of the timing, just so we

3  have a good record, the timing and the proposed stalking horse.

4  Just anything about the proposed stalking horse, I think would

5  be great.

6          MR. KISSNER:  Okay, absolutely.  And I'll actually,

7  apropos the discussion of timing, maybe I'll go backwards in

8  time a little bit, just to set the stage as to how we got here.

9          As Your Honor heard on Tuesday, and as read in the

10  papers, the debtors own two-related recycling facilities that

11  are next door to each other, and those facilities, which are in

12  Freeport, they constitute substantially all the assets of the

13  debtors.  Beginning in late June, the debtors, the assistance

14  of Mr. Morgner's team at Jefferies, began a marketing process

15  for these assets.  This process is described in greater detail

16  in the mortgage declaration, but the punchline is that prior to

17  the petition date, Jefferies had contacted about 93 parties, 40

18  of whom were under NDA, and they've received significant early

19  interest so far in these assets, and I actually understand from

20  speaking with Mr. Morgner's team this morning that there may

21  have been additional outreach since the filing of these

22  petitions on the assets.

23          That marketing process is going to continue, now

24  that we're in Chapter 11, and under the proposed bidding

25  procedures, bids will be due a month from today, on September

1  22nd.  An auction, to the extent necessary, would follow on the

2  29th, and then we would target a close by the first or second

3  week in October.  The deadline under the bid procedures is

4  October 10th.  think there might be a little flex in the DIP

5  milestones to the extent necessary to close.

6          All told, that means that there's going to be about

7  90 days of total marketing between the prepetition and

8  post-petition process, which, as described in greater detail in

9  Mr. Morgner's declaration, we think is, you know, very robust,

10  and we think that that's going to provide ample time for

11  potential purchasers to come forward and express interest and

12  make an offer for these assets.

13          So that's the marketing process, and I think we're

14  very hopeful that that process is going to yield a third party

15  that comes forward and wants to make a bid for these assets.

16  In case one doesn't, though, we have negotiated an agreement

17  with the prepetition bondholders and DIP lenders to serve as a

18  stalking horse bidder for the companies' assets.  I think we're

19  still dotting I's and crossing T's on some of the schedules and

20  ancillaries of that agreement.  We did file a form of APA that

21  I think is pretty close to final, as Exhibit A to the motion.

22          In terms of that agreement, I think it is a fairly

23  standard asset sale.  An affiliate of the DIP lenders are going

24  to be the stalking horse, and they're going to provide

25  consideration that will take the form of a combination of a

10

1   credit bid of some or all of the DIP obligations, the

2   assumption of liabilities, and then payment of cash.

3           In connection with that stalking horse agreement in

4   there, the DIP lenders agreed to serve as the baseline bidder.

5   We're seeking what I think I characterized on Tuesday, and I

6   stand behind, very modest bid protections that take the form of

7   an expense reimbursement up to a cap of $2.5 million.

8   Mr. Morgner goes into more detail on this in his declaration,

9   but based on where the market is and Jefferies' team's

10  experience doing similar processing at similar scale, we think

11  that the stalking horse APA and the limited bid protections are

12  necessary and desirable to set a baseline bid here.  We think

13  they send a very positive message to the marketplace that the

14  DIP lenders believe in these assets, they stand behind these

15  assets, and they're ready and willing to own these assets,

16  which, you know, is very helpful to have when you're trying to

17  sell some assets, right, as opposed to what you can refer to as

18  a freefall sale.

19          In addition, the limited bid protections that are

20  being granted were a necessary inducement to the stalking

21  horse's agreeance to serve in that capacity, and as explained

22  in the declaration supporting the motion, we believe them to be

23  fair, reasonable, and customary protections.

24          So I'll pause there and see if Your Honor had any

25  other questions or there were any other highlights that you

1    wanted me to hit.

2              THE COURT:  That's perfect, thank you.

3              MR. KISSNER:  Okay.

4              THE COURT:  Let me just ask if anyone wishes to be

5    heard in connection with this motion.  Okay.  I would then note

6    that at Docket 11 -- oh, Mr. Messersmith, I apologize.  Yes.

7              MR. MESSERSMITH:  Good morning, Your Honor.  Again,

8    it's Mike Messersmith on behalf of UMB Bank.  I just wanted to

9    say that we support everything that Mr. Kissner said.  Just for

10   the record, you know, he is absolutely correct that we just

11   want to make sure that the market knew that this plant was

12   going to continue to be operationally viable, that it was going

13   to continue to produce vanadium and molybdenum for the American

14   industrial base, and in (indiscernible), we viewed it as a

15   valuable part of the community and a valuable part of the Gulf

16   Coast.  And so for that reason, you know, we want -- we

17   supported the company financially prepetition by putting in a

18   variety of rescue boats in order to support the company.  And

19   if we don't find a viable third-party bidder that we think

20   really recognizes the value of the facility, we're going to

21   take it ourselves.  And so that's -- you know, it's as simple

22   as that.  And by doing this over a 90-day period, you know, a

23   sale process over a 90-day period, we think we can really test

24   the marketplace and see if there is a viable third-party

25   purchaser.  And if there isn't, then we'll buy the plant

1  ourselves and run it.

2           THE COURT:  Thank you.

3           Mr. Kissner, just one question.  I know that you

4  discussed kind of some kind of agreements with TCEQ and Mason.

5  Do you contemplate filing kind of a revised proposed order, or

6  what form of order do you anticipate asking me to sign?

7           MR. KISSNER:  I believe the plan was to submit a

8  revised form of order today to chambers.  We'll take your

9  direction on how you wish to proceed, but we think that that is

10 probably the most straightforward way.

11          THE COURT:  Okay.  Just that worked for me.  I'll

12 then note that at Docket Number 11, there was a motion filed on

13 the petition date seeking approval of bidding procedures in

14 connection with the sale of assets to approve the auction.

15 Procedures provide certain protections to -- and to recognize a

16 stalking horse bidder.  I'm going to find that there's been

17 proper notice and service of the motion.  Emergency relief is

18 requested.  We've given this some time, and I feel comfortable

19 considering the emergency relief today on August 22nd.  So I'm

20 going to find that emergency consideration is warranted.

21          Going to the motion itself, the motion seeks to not

22 approve a sale today, but essentially to create a process by

23 which parties will come back and determine who the ultimate

24 purchaser of these assets will be.  I take great comfort in the

25 declaration filed by Mr. Morgner that really kind of lays out

13

1   all the prepetition efforts that have been -- gone into this

2   and the number of parties by professionals who know what

3   they're doing.  And so they've reached out on a prepetition

4   basis to test it -- test the market, and we're going to

5   essentially create a process by where the market will continue

6   to be engaged and the timelines are not jammed.  They really

7   have set it out by which anyone who's interested has either

8   heard about it or will hear about it, any strategic party, to

9   come in and take a look and see if they want to participate in

10  the process.  So there's transparency and there's process, and

11  I'm comfortable approving the motion.

12          This is certainly an exercise of the debtor's

13  business judgment, and that is the standard for here.  Again,

14  all rights are reserved with respect to the ultimate purchaser,

15  but we have a proposed stalking horse.  The bid protections are

16  appropriate, and I will approve them.  I will approve the

17  process.  The dates all make sense, and they are appropriate,

18  and they are appropriate because they're designed -- and I rely

19  on the Morgner declaration here, but I also can just see it.

20  They're designed to maximize value and really determine to

21  provide a robust opportunity, and that is not only supported by

22  the debtors.  It is supported by the statements of

23  Mr. Messersmith, right, and just so money will be king here,

24  and so we'll just see where this goes, but I'm comfortable with

25  the process, and I understand that there's going to be a

14

 1  revised proposed form of order, but there's been notice as to

 2  what those are.  There's no surprise as to what they are, and

 3  so I am comfortable with it.  I thank everyone for taking the

 4  time today, and I'll sign, and I'll approve the bid procedures,

 5  and we'll see where this goes.  We'll take it one step at a

 6  time.

 7          Mr. Kissner, once that is on the docket, I will

 8  assume that it's ready for me to sign.  Just once you upload

 9  it, let my case manager -- shoot an email to Ms. Saldana, and

10  we'll get it on file today, okay?

11          MR. KISSNER:  Thank you very much, Your Honor.

12          THE COURT:  All right.

13          MR. KISSNER:  We will just send it back around one

14  more time to make sure everyone has seen the final language,

15  and it should be ready for signing this afternoon, so thank you

16  again for your accommodation.

17          THE COURT:  In terms of what you're going to send

18  me, I think -- I don't think you even need to file a redline.

19  I think just a clean, if everything is safe on the record, and

20  I know what's coming, and I can go find the language that

21  you're referring to with TCEQ and Mason, so just a clean.

22          MR. KISSNER:  Yes.

23          THE COURT:  and I'll get it signed on the docket.

24  Is there anything else we need to take care of today?

25          MR. KISSNER:  I don't believe so, and to make it

1  marginally easy for you, I believe the relevant paragraphs will

2  be 27 through 29 of the order.

3              THE COURT:  All right.  Thank you very much.

4              All right, folks.  Thank you very much.  Have a good

5  weekend.  Thank you.

6              MR. KISSNER:  Have a fantastic weekend.  Thank you,

7  Your Honor.

8         (Proceedings concluded at 10:19 a.m.)

9                        *  *  *  *  *

10

11

12

13

14                 **C E R T I F I C A T I O N**

15

16         I, Alicia Jarrett, court-approved transcriber, hereby

17  certify that the foregoing is a correct transcript from the

18  official electronic sound recording of the proceedings in the

19  above-entitled matter.

20

21

22

23  _____

24  ALICIA JARRETT, AAERT NO. 428      DATE: August 25, 2025

25  ACCESS TRANSCRIPTS, LLC